**Burt L. LEVIN, Plaintiff–Appellant,**

**v.**

**ANALYSIS & TECHNOLOGY, INC., Defendant–Appellee.**

**No. 479, Docket 91–7684.**

United States Court of Appeals, Second Circuit.

Argued Dec. 5, 1991.

Decided April 3, 1992.

Burt L. Levin, pro se.

Marc L. Zaken, Hartford, Conn. (Jay E. Bovilsky, William H. Narwold, Cummings & Lockwood, of counsel), for defendant-appellee.

Before: MINER and ALTIMARI, Circuit Judges.*

---

* Judge Kaufman, originally a member of the panel, died on February 1, 1992. The appeal is being decided by the remaining members of the panel pursuant to Local Rule § 0.14(b).

ALTIMARI, Circuit Judge:

Plaintiff-appellant Burt L. Levin, proceeding *pro se*, appeals from a judgment entered in the United States District Court for the District of Connecticut (Alan H. Nevas, *Judge*), granting defendant-appellee Analysis & Technology, Inc.'s ("A & T") motion for summary judgment. Levin alleges that he was unlawfully dismissed as a military analyst by his employer A & T because of age discrimination, in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.* The district court granted summary judgment in favor of A & T on the ground that Levin had failed to establish a *prima facie* case of age discrimination. On appeal, Levin contends that the district court improperly granted summary judgment to A & T because he had established a *prima facie* case and raised genuine issues of material fact for trial.

For the reasons set forth below, we reverse the judgment of the district court and remand for trial.

## BACKGROUND

A & T, a defense contractor whose primary client is the United States Navy, hired Levin on October 5, 1976 to work as a military analyst. Levin's work involved analysis of the Navy's anti-submarine warfare ("ASW") exercises in order to help the Navy improve its tactics and operations. Over his twelve year term of employment, Levin earned a reputation as A & T's leading analyst for Arctic region ASW exercises and post-exercise analyses.

It is undisputed that Levin's work product for most of his time at A & T was excellent. Indeed, after A & T instituted formal yearly evaluations in 1986, Levin received consistently high scores in every performance category with the exception of "attitude." Levin's attitude problems stemmed from the general abruptness and tactlessness he displayed whenever he disagreed with a co-worker. Levin acknowledges that he has a tendency toward gruffness, but insists that this is a personality trait which his co-workers understand and A & T has long accepted. Levin was informed several times that his attitude needed improvement.

In August 1988, Levin's supervisor, John Hogan wrote in Levin's annual performance evaluation than his usual attitude problem had begun to adversely affect client relationships. In particular, Hogan noted that Levin had been "hostile and vociferous" in his opposition to certain changes the Navy requested on A & T methodology in connection with a large ASW contract. Hogan received complaints about Levin's attitude and performance from project managers of the Navy and the British Royal Navy who were supervising the ASW contract. Hogan relayed this information to A & T management in a memorandum dated February 9, 1989. In this memorandum, Hogan stated that he had tried discussing these complaints with Levin, but that Levin had become belligerent. Hogan concluded that A & T was left with no alternative "but to replace him as soon as possible."

During approximately this same period, Levin contends that he had been subjected to a number of negative remarks by superiors concerning his age. In particular, Levin alleges that at various times Hogan told Levin that he suffered from memory loss, was set in his ways, and was "over the hill." Levin further contends that a project manager of the Royal Navy pushed Levin into a chair with wheels while asking "Are you ready for the wheelchair?"

Levin was laid off from his department on February 21, 1989. He was told that he was being laid off for two reasons—first, because a shortfall in the ASW contract required cutbacks and second, because, Commander William H. McGann III, a senior officer and the Navy's project manager on the ASW contract was dissatisfied with his work. A & T promised Levin it would attempt to secure alternative employment for him. Although Levin worked for A & T on a temporary basis for several weeks, his employment was finally terminated in April 1989. At the time of his discharge, Levin was fifty-seven years old—approximately twelve years older than his oldest co-worker.

In July 1989, A & T advertised the availability of a position as "Senior Analyst" for "planning, conducting, and analyzing submarine tactical development exercises." The advertisement listed qualifications similar to Levin's and added "Arctic experience a plus."

On February 9, 1990, Levin initiated the underlying action in the United States District Court for the District of Connecticut against A & T alleging that he had been unlawfully discriminated against on the basis of his age in violation of the ADEA. *See* 29 U.S.C. § 621 *et seq.* After a period of discovery, A & T moved for summary judgment on the ground that Levin had failed to establish a *prima facie* case of age discrimination. Specifically, A & T contended that there were no facts alleged which could give rise to an inference of discriminatory motive in Levin's termination.

Levin opposed A & T's motion for summary judgment, arguing that he had satisfied his *prima facie* burden and that there existed genuine issues of material fact to be tried. Specifically, Levin alleged, among other things, that during his employment at A & T, his superiors had made disparaging comments in regard to his age, that his duties were reassigned to younger workers, and that despite the alleged contract shortfall, A & T advertised a vacancy for a position similar to Levin's.

After reviewing the evidence submitted by the parties, the district court concluded that Levin had not met his *prima facie* burden because he had "produced neither direct nor circumstantial evidence from which a trier of fact reasonably could draw an inference of discrimination." On this basis, the district court granted A & T's motion for summary judgment and dismissed Levin's complaint.

Levin now appeals.

## DISCUSSION

■ Summary judgment is appropriate when "there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v.* *Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Owens v. New York City Hous. Auth.,* 934 F.2d 405, 408 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991); *Taggart v. Time Inc.,* 924 F.2d 43, 45–46 (2d Cir.1991). In ruling on a motion for summary judgment, a court must resolve all ambiguities and inferences from the underlying facts in favor of the non-moving party. *See, e.g., Binder v. Long Island Lighting Co.,* 933 F.2d 187, 191 (2d Cir.1991); *Taggart,* 924 F.2d at 46. We review the district court's grant of summary judgment *de novo. See, e.g., Blanchard v. Stone Safety Corp.,* 935 F.2d 18, 19 (2d Cir.1991) (per curiam); *Taggart,* 924 F.2d at 46.

In actions under the ADEA, we apply the familiar burden shifting analysis enunciated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) and *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093–94, 67 L.Ed.2d 207 (1981). *See, e.g., Taggart,* 924 F.2d at 46; *Montana v. First Fed. S. & L. Ass'n of Rochester,* 869 F.2d 100, 103 (2d Cir.1989).

■ Under this analytical framework, a plaintiff establishes a *prima facie* case of discriminatory discharge based on age discrimination by showing that he or she (1) is a member of a protected age group; (2) was qualified to perform the duties required by the position; (3) was discharged; and, (4) that the discharge occurred under circumstances suggesting that age was a factor. *See, e.g., Hollander v. American Cyanamid Co.,* 895 F.2d 80, 83 (2d Cir. 1990); *Montana,* 869 F.2d at 104; *Pena v. Brattleboro Retreat,* 702 F.2d 322, 324 (2d Cir.1983). The *prima facie* case " 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.' " *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094 (quoting *Furnco Construction Corp. v. Waters,* 438 U.S. 567, 577, 98 S.Ct. 2943, 2949–50, 57 L.Ed.2d 957 (1978)).

■ Once a plaintiff has established a *prima facie* case of discriminatory discharge, the burden shifts to the defendant to articulate a non-discriminatory, legitimate business reason for the alleged discriminatory action. *See Burdine*, 450 U.S. at 254–55, 101 S.Ct. at 1094–95; *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824; *Montana*, 869 F.2d at 104. If the defendant meets this burden with sufficient specificity, the onus returns to the plaintiff who ultimately must demonstrate by a preponderance of the evidence that the stated reasons are merely a pretext for discrimination. *See Burdine*, 450 U.S. at 255–56, 101 S.Ct. at 1094–95. In meeting this ultimate burden, an ADEA plaintiff need not show that age was the only factor in the employer's discharge decision, but that age was a determinative factor. *See Montana*, 869 F.2d at 105; *see also Hagelthorn v. Kennecott Corp.*, 710 F.2d 76, 82 (2d Cir.1983). We now consider whether under the applicable standard, Levin has established a *prima facie* case of age discrimination.

■ It is undisputed that at fifty-seven years old, Levin was approximately twelve years older than the next oldest individual in his department and was a member of a protected age group. Nor is it disputed that as A & T's primary analyst for Arctic operations, Levin was amply qualified to perform his duties. Furthermore, A & T does not dispute that Levin was in fact discharged. At issue then is whether Levin made out the fourth element of a *prima facie* case, namely, whether he articulated a basis on which a reasonable trier of fact could conclude that his discharge occurred under circumstances giving rise to an inference of discrimination.

In opposing A & T's motion for summary judgment, Levin alleged a series of specific derogatory references to his age made by his superiors at A & T. Levin also pointed out that his duties were assumed by much younger co-workers. Furthermore, Levin offered evidence that his discharge may not have been due to A & T proffered reasons, *i.e.*, an ASW contract shortfall and Levin's poor attitude.

On the issue of contract shortfall, Levin pointed out that subsequent to his discharge and despite A & T's professed unavailability of funds to retain him, A & T advertised the availability of a "senior analyst" position which required qualifications similar to Levin's. In addition, Levin reasonably challenged the calculations used by A & T in interpreting its funding under the ASW contract. Finally, as Levin noted, no other A & T employee was laid off due to a contract shortfall. Indeed at oral argument, A & T conceded that the contract shortfall was not the "primary" reason for Levin's discharge.

With regard to his poor attitude, Levin has advanced evidence that his irascible nature had for many years been accepted by his co-workers and superiors at A & T. Indeed, as a letter written by Hogan to Levin noted, co-workers confronted with Levin's temper realized that "Burt was just being Burt." Finally, and perhaps, most significantly, McGann, the ranking officer in charge of the ASW contract, has denied complaining to A & T about Levin, contrary to A & T's representations to Levin.

Construing Levin's pleadings in his favor, Levin has advanced facts sufficient to establish a *prima facie* case of age discrimination and to survive a motion for summary judgment. Indeed, in light of the fact that A & T has argued that Levin's attitude and the contract shortfall were, in fact, the legitimate nondiscriminatory reasons on which it based Levin's termination, we note that Levin has raised genuine triable issues of fact with regard to whether A & T's reasons for discharging Levin were pretextual. We therefore hold that the district court erred in granting summary judgment.

## CONCLUSION

Based on the foregoing, the district court's grant of summary judgment is reversed and the case remanded for trial.