21 F.3d 502
 64 Fair Empl.Prac.Cas. (BNA) 638,
64 Empl. Prac. Dec. P 42,973
Howard E. ROBINSON, Plaintiff-Appellant,
v.
OVERSEAS MILITARY SALES CORPORATION, Army & Air Force
Exchange Service, George W. Deering, Bradley J.
Potter, and Randall L. Mullins,
Defendants-Appellees.
 No. 796, Docket 93-6211.
 United States Court of Appeals,
Second Circuit.
 Argued Feb. 1, 1994.
Decided April 6, 1994.
 
 Howard E. Robinson, plaintiff-appellant, pro se.
 John E. Page, New York City (Vincent Alfieri, Robinson, Silverman, Pearce, Aronsohn & Berman, of counsel), for defendant-appellee Overseas Military Sales Corp.
 Elliot M. Schachner, Asst. U.S. Atty., E.D.N.Y., Brooklyn, NY (Zachary W. Carter, U.S. Atty., Robert L. Begleiter and Deborah B. Zwany, Asst. U.S. Attys., of counsel), for the Federal defendants-appellees.
 Before: FEINBERG, OAKES and KEARSE, Circuit Judges.
 
 OAKES: Senior Circuit Judge:
 
 1
 Howard E. Robinson appeals from the judgment of the United States District Court for the Eastern District of New York, I. Leo Glasser, Judge, 827 F.Supp. 915, granting summary judgment in favor of the Overseas Military Sales Corporation ("OMSC") and dismissing Robinson's complaint in its entirety against the Army and Air Force Exchange Service ("AAFES") and three United States Army officers ("individual federal defendants") in their official and individual capacities. We now affirm.
 
 I. Background
 A. Facts
 
 2
 AAFES is a federal agency commanded jointly by the Air Force and the Army that operates exchanges at which military personnel can purchase goods. AAFES entered into an agreement with the Chrysler Corporation under which Chrysler sold new cars through AAFES-operated exchanges. Chrysler, in turn, entered into an agreement with OMSC under which OMSC provided independent sales agents to sell the cars at AAFES exchanges. Robinson, a 60-year-old resident of Massachusetts, was retained by OMSC as one such sales agent. Robinson worked for OMSC and its affiliates from September 1979 through August 1990, selling Chrysler automobiles at Camp Walker and Camp Humphries, United States military installations in Taegu, Korea.
 
 
 3
 In November 1989, United States military police began an investigation into allegations that Robinson and his wife, Soon Seon Robinson, illegally sold duty-free goods to Korean nationals and improperly purchased rations at a military installation after their ration privileges were revoked. As part of the investigation, individual federal defendant Gregory W. Deering, a sergeant in the United State Army military police, attempted to interview Robinson. Robinson refused to answer Deering's questions. Deering prepared a Military Police Report of his investigation dated November 3, 1989. Individual federal defendant Bradley J. Potter, a Special Agent in the Criminal Investigations Division of the United States Army ("CID"), prepared a second report, dated May 16, 1990, finding that there was sufficient evidence to commence administrative proceedings against Robinson for the unlawful sale of duty-free goods.
 
 
 4
 A second investigation began in September 1990. Individual federal defendant Randall L. Mullins, also a Special Agent of CID, prepared a report of this investigation, dated November 7, 1990, concluding that Robinson illegally obtained a temporary ration control card and purchased rations at AAFES facilities without authorization. Based on this report, on December 10, 1990, the Army barred Robinson from entering all Area IV military installations in Korea.
 
 
 5
 During these investigations, OMSC repeatedly discharged and rehired Robinson. OMSC first discharged Robinson in August 1990. On December 7, 1990, OMSC rehired Robinson. OMSC discharged Robinson again on February 13, 1991. OMSC reinstated Robinson in August 1991, but again discharged him in October 1991, when the Army denied him permission to enter military installations.[1]
 
 B. Proceedings Below
 
 6
 On December 21, 1992, Robinson commenced this action. In his complaint, Robinson alleged that OMSC fired him in October 1991 at the request of the AAFES commander in Korea, Colonel Ford; that Colonel Ford based his action upon reports of investigations into Robinson's alleged black market activities; and that these reports were intentionally false. The complaint also alleged that all of the defendants violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. Secs. 621-634 (1988 & Supp. IV 1992). Further, the complaint alleged that the federal defendants violated the Federal Tort Claims Act ("FTCA"), 28 U.S.C. Secs. 1346(b), 1402(b), 2401(b), 2671-2680 (1988 & Supp. IV 1992), and 42 U.S.C. Sec. 1983 (1988). In a memorandum in opposition to a motion to dismiss, Robinson alleged additional claims including that the federal defendants violated 18 U.S.C. Secs. 242 and 1385 (1988);[2] that the federal defendants violated his Fourth Amendment rights by searching his home; and that defendant Mullins arrested him without probable cause. Robinson also alleged that the federal defendants violated the Privacy Act, 5 U.S.C. Sec. 552a (1988 & Supp. IV 1992), and the Freedom of Information Act ("FOIA"), 5 U.S.C. Sec. 552 (1988).
 
 
 7
 In a Memorandum and Order dated July 15, 1993, the district court granted OMSC's motion for summary judgment and the federal defendants' motion to dismiss. With respect to OMSC, the district court found that (1) the ADEA did not apply to foreign employers and (2) regardless of whether the ADEA applied to OMSC, OMSC had a legitimate reason for firing Robinson. With respect to Robinson's ADEA claims against the federal defendants, the district court found that (1) AAFES did not have an employer-employee relationship with Robinson; (2) regardless of Robinson's relationship with AAFES, the ADEA did not apply to AAFES under the doctrine of sovereign immunity. With respect to Robinson's claims under the FTCA, the district court substituted the United States as the sole defendant but dismissed the claims (1) on the ground that Robinson failed to exhaust his administrative remedies and (2) on the merits under 28 U.S.C. Sec. 2680(k) (FTCA does not apply to claims arising in a foreign country). The district court construed Robinson's claims under 42 U.S.C. Sec. 1983 as Bivens claims but dismissed the claims against the individual federal defendants in their official capacities for want of subject matter jurisdiction and in their individual capacities for lack of personal jurisdiction and insufficiency of service of process. The district court dismissed Robinson's claims under 18 U.S.C. Secs. 242 and 1385 on the ground that these statutes do not create a private cause of action. Finally, the district court found that Robinson had withdrawn his privacy act and FOIA claims.
 
 
 8
 Judgment was entered on July 19, 1993. Robinson filed a timely notice of appeal on August 9, 1993.
 
 II. Discussion
 
 9
 We will affirm a grant of summary judgment only when de novo review of the record in a light most favorable to the non-moving party reveals no genuine issue of material fact. Viacom Int'l, Inc. v. Icahn, 946 F.2d 998, 1000 (2d Cir.1991), cert. denied, --- U.S. ----, 112 S.Ct. 1244, 117 L.Ed.2d 477 (1992). In so doing, we will resolve all ambiguities and draw all inferences in favor of the non-moving party. Levin v. Analysis & Technology, Inc., 960 F.2d 314, 316 (2d Cir.1992).
 
 
 10
 As in the case of review of a grant of summary judgment, we will review de novo the grant of a motion to dismiss for want of subject matter or personal jurisdiction. Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir.1993). The burden of proving jurisdiction is on the party asserting it. Id.; Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir.), cert. denied, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990); CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 364 (2d Cir.1986). Where, however, the district court relies solely on the pleadings and supporting affidavits, the plaintiff need only make a prima facie showing of jurisdiction. CutCo, 806 F.2d at 364.[3] In determining whether a plaintiff has met this burden, we will not draw "argumentative inferences" in the plaintiff's favor. Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir.1992). We will, however, construe jurisdictional allegations liberally and take as true uncontroverted factual allegations. Square D Co. v. Niagara Frontier Tariff Bureau, Inc., 476 U.S. 409, 411, 106 S.Ct. 1922, 1923-24, 90 L.Ed.2d 413 (1986); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1052 (2d Cir.1993).[4]
 
 
 11
 A. Robinson's Age Discrimination Claims against OMSC
 
 
 12
 The district court dismissed Robinson's age discrimination claims against OMSC on the ground that the ADEA did not apply to OMSC, a Swiss corporation. The district court also based its decision on the alternative ground that Robinson failed to raise a genuine issue of material fact as to whether OMSC's asserted basis for discharging Robinson was pretextual. We find that Robinson did not raise a genuine issue of material fact as to whether OMSC's asserted basis for discharging Robinson was pretextual. We therefore affirm this aspect of the district court's decision.[5]
 
 
 13
 The ADEA prohibits employers from discriminating against workers aged 40 or older on the basis of their age. 29 U.S.C. Secs. 621, 623, 631. It is well-established that ADEA claims are analyzed in the same manner as are claims under Title VII. See Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121, 105 S.Ct. 613, 621-22, 83 L.Ed.2d 523 (1985). This is so whether the plaintiff asserts that the defendant's purported justification for an adverse employment action is pretextual, see Montana v. First Fed. Sav. & Loan Ass'n of Rochester, 869 F.2d 100, 103 (2d Cir.1989), or a dual motive accompanying impermissible age discrimination, see Ostrowski v. Atlantic Mut. Ins. Cos., 968 F.2d 171, 180 (2d Cir.1992). In this case, although there was some evidence of direct discrimination,[6] the evidence was insufficient to establish a prima facie "dual motivation" case. The district court therefore correctly analyzed the case under the burden-shifting analysis developed for Title VII cases in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04, 93 S.Ct. 1817, 1824-25, 36 L.Ed.2d 668 (1973) and Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981). See Montana, 869 F.2d at 103.
 
 
 14
 To survive a motion for summary judgment under this analysis, the plaintiff must first establish a prima facie case of illegal age discrimination. Levin, 960 F.2d at 316; Montana, 869 F.2d at 103. Under McDonnell Douglas, a plaintiff establishes a prima facie case of discrimination by showing that he or she (1) is a member of a protected group; (2) was qualified to perform the duties required by the position; and (3) suffered an adverse employment action "under circumstances suggesting that age was a factor." Levin, 960 F.2d at 316. The prima facie case " 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.' " Burdine, 450 U.S. at 254, 101 S.Ct. at 1094 (quoting Furno Constr. Corp. v. Waters, 438 U.S. 567, 577, 98 S.Ct. 2943, 2949-50, 57 L.Ed.2d 957 (1978)). Once the plaintiff establishes a prima facie case, the burden shifts to the defendant to articulate a "clear and reasonably specific," non-discriminatory, business rationale for the employment action. Binder v. Long Island Lighting Co., 933 F.2d 187, 191 (2d Cir.1991) (internal quotation omitted). If the defendant articulates such a rationale, the plaintiff must then raise a material issue of fact as to whether the asserted non-discriminatory reason is mere pretext for illegal age discrimination. The plaintiff is not required to show that age was the only factor motivating the employer's conduct. Montana, 869 F.2d at 105; Hagelthorn v. Kennecott Corp., 710 F.2d 76, 82 (2d Cir.1983). The plaintiff must, however, demonstrate by a preponderance of the evidence that "age was a determinative factor." Levin, 960 F.2d at 317.
 
 
 15
 In response to Robinson's allegations of age discrimination, OMSC asserted that it discharged Robinson not because of his age but because he was denied access to the military installation on which he was to work. Robinson failed to demonstrate that this asserted justification was mere pretext for illegal discrimination. Hence, even assuming that Robinson met his burden of establishing a prima facie case of age discrimination, we find that Robinson failed to raise a genuine issue of material fact as to the pretextuality of OMSC's asserted non-discriminatory rationale for Robinson's termination.
 
 
 16
 In his brief on appeal, Robinson argues that the fact that OMSC failed to offer him a transfer to a different location constitutes evidence that his termination was pretextual. Robinson, however, points to no evidence that he ever affirmatively requested a transfer. Further, he points to no evidence that OMSC maintained a policy of transferring employees denied access to one military installation to another military installation. Robinson only alleged that OMSC had "sites worldwide and a fairly high personnel turnover rate. Individual employees have routinely been switched between overseas areas such as mainland Japan, Okinawa, Guam, Germany and Panama." Robinson's Brief at 13. We find that these allegations, without more, are insufficient to raise a genuine issue of material fact as to whether the failure of OMSC to offer Robinson a transfer demonstrates pretext.
 
 
 17
 In Montana, this court recognized that the fact that an employer failed to offer a transfer to an employee who was discharged pursuant to a restructuring plan was relevant in determining whether the employer's asserted justification was pretext. This court did not hold, however, that the failure to offer a discharged employee a transfer would, without more, establish the pretextuality of an employer's asserted justification. In Montana, this court considered such a failure together with five other factors before concluding that there existed a genuine issue of material fact as to whether the employer's asserted justification was pretext. 869 F.2d at 105-06.
 
 
 18
 Montana may also be distinguished on the ground that the asserted non-discriminatory justification at issue in Montana was a restructuring plan. This case deals with an employee who was discharged after being denied travel orders by the military command of a base on which he was to perform his employment duties. Restructuring plans, by their nature, often entail the transfer of qualified personnel within the restructured corporation. In such a context, the failure to offer an employee the opportunity to transfer may constitute evidence that the employer's assertion that an employee was discharged pursuant to a restructuring plan was pretext. In this case, however, OMSC does not assert that it discharged Robinson pursuant to a restructuring plan. Rather, it asserts that it discharged Robinson because he was denied access to military installations--access that was necessary for his employment. Absent evidence that OMSC maintained a policy of transferring employees who were denied access to one military installation to a new installation in a new country, we find that the fact that OMSC failed to offer Robinson a transfer does not, without more, create a genuine issue of material fact as to whether OMSC's asserted rationale for discharging Robinson was pretext. In sum, Robinson has failed, as a matter of law, to meet his evidentiary burdens under the ADEA. We therefore affirm the district court's grant of summary judgment in favor of OMSC.
 
 
 19
 B. Robinson's Age Discrimination Claims against the Federal Defendants
 
 
 20
 The ADEA prohibits employers from discriminating on the basis of age against their employees. 29 U.S.C. Sec. 623(a). The ADEA does not cover independent contractors. Frankel v. Bally, Inc., 987 F.2d 86, 89-90 (2d Cir.1993) (adopting, for purposes of the ADEA, a definition of employee grounded in common law agency principles).
 
 
 21
 As discussed above, AAFES contracted with the Chrysler Corporation which, in turn, contracted with OMSC to provide independent sales agents to sell cars on U.S. military installations overseas. Robinson was one such agent. While the district court noted that there existed a genuine issue of material fact as to whether Robinson was an employee of OMSC, the district court concluded that there was no such issue with respect to the federal defendants. Neither AAFES nor any of the individual federal defendants could control the manner and means by which Robinson's work was accomplished. Accordingly, Robinson was not an employee, for purposes of the ADEA, of AAFES or the individual federal defendants. The district court, therefore, properly granted summary judgment to the federal defendants on Robinson's ADEA claims. See Frankel, 987 F.2d at 90. We affirm this aspect of the district court's grant of summary judgment.
 
 
 22
 C. Robinson's Tort Claims against the Federal Defendants
 
 
 23
 The district court properly substituted the United States as a party defendant in place of the individual defendants. In a tort action against federal officers, 28 U.S.C. Sec. 2679(b)(1) provides for the substitution of the United States as a party upon certification by the Attorney General that the officers were acting within the scope of their employment. See Rivera v. United States, 928 F.2d 592, 608-09 (2d Cir.1991). The district court then properly found that AAFES was immune from suit under the FTCA. See Army & Air Force Exchange Serv. v. Sheehan, 456 U.S. 728, 733-34, 102 S.Ct. 2118, 2121-22, 72 L.Ed.2d 520 (1982). This left the United States as the sole defendant to Robinson's tort claim. The district court proceeded to dismiss Robinson's claim for failure to exhaust his administrative remedies under the FTCA. 28 U.S.C. Sec. 2675 provides that an "action shall not be instituted ... unless the claimant shall have first presented the claim to the appropriate Federal agency." Because Robinson failed to first present his claim to the appropriate agency, the district court properly dismissed his tort claims for want of subject matter jurisdiction. McNeil v. United States, --- U.S. ----, 113 S.Ct. 1980, 1983-84, 124 L.Ed.2d 21 (1993); Metadure Corp. v. United States, 569 F.Supp. 1496, 1498 (E.D.N.Y.1983) (dismissing claim under FTCA for failure to exhaust administrative remedies).
 
 D. Robinson's Bivens Claims
 
 24
 Robinson also claimed that AAFES and the individual federal defendants violated his constitutional rights and sought damages for these alleged violations under 42 U.S.C. Sec. 1983. Because AAFES is a federal agency and because the individual defendants are federal officers, the district court construed Robinson's section 1983 claims as Bivens claims. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971); see also Daloia v. Rose, 849 F.2d 74, 75 (2d Cir.) (per curiam) (construing pro se section 1983 claims against federal defendants as Bivens claims), cert. denied, 488 U.S. 898, 109 S.Ct. 242, 102 L.Ed.2d 231 (1988).
 
 
 25
 1. Robinson's Bivens Claims against AAFES and the Individual Federal Defendants in Their Official Capacities
 
 
 26
 Robinson's claims against AAFES and the individual federal defendants in their official capacities were properly dismissed on the ground of sovereign immunity. In a Bivens action, alleged victims of constitutional violations by federal officials may recover damages despite the absence of any statute specifically conferring such a cause of action. See Carlson v. Green, 446 U.S. 14, 18, 100 S.Ct. 1468, 1471, 64 L.Ed.2d 15 (1980). Such an action, however, must be brought against the federal officers involved in their individual capacities. Under the doctrine of sovereign immunity, an action for damages will not lie against the United States absent consent. Because an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are also barred under the doctrine of sovereign immunity, unless such immunity is waived. Federal Deposit Ins. Corp. v. Meyer, --- U.S. ----, ---- - ----, 114 S.Ct. 996, 1005-06, 127 L.Ed.2d 308 (1994); see Kentucky v. Graham, 473 U.S. 159, 166-67, 105 S.Ct. 3099, 3105-06, 87 L.Ed.2d 114 (1985). Therefore, to the extent that Robinson's claims constituted a Bivens action against AAFES or the individual federal defendants in their official capacities, they were properly dismissed for want of subject matter jurisdiction.[7] See Meyer, --- U.S. at ---- - ----, 114 S.Ct. at 1005-06.
 
 
 27
 2. Robinson's Bivens Claims against the Individual Federal Defendants in Their Individual Capacities
 
 
 28
 The district court dismissed Robinson's claims against the individual federal defendants in their individual capacities for want of personal jurisdiction. According to affidavits submitted in support of the motion to dismiss, none of the individual federal defendants reside in New York. Personal jurisdiction of a federal court over a non-resident defendant is governed by the law of the state in which the court sits--subject, of course, to certain constitutional limitations of due process. Seetransport, 989 F.2d at 580; Arrowsmith v. United Press Int'l, 320 F.2d 219, 222-23 (2d Cir.1963) (en banc). Under New York law, personal jurisdiction may be asserted over a non-domiciliary who
 
 
 29
 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
 
 
 30
 2. commits a tortious act within the state, except as to a cause of action for defamation of character arising from the act; or
 
 
 31
 3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he
 
 
 32
 (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or
 
 
 33
 (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or
 
 
 34
 4. owns, uses or possesses any real property situated within the state.
 
 
 35
 N.Y.Civ.Prac.L. & R. Sec. 302(a) (1990). According to affidavits submitted in support of the motion to dismiss, neither defendant Deering nor defendant Mullins has ever lived in, worked in, traveled to or through, or visited the State of New York. Similarly, defendant Potter has "been in the State of New York on only two occasions," for a one-week vacation in 1982 and for "several hours" in 1989 while "changing airplanes" at John F. Kennedy International Airport while on Army business unrelated to Robinson. The only asserted basis for personal jurisdiction over the individual defendants is a telephone call from an AAFES office in Dallas, Texas to OMSC's office in New York. The individual federal defendants, however, are not employees of AAFES. There was no evidence that any of the individual federal defendants placed the call or caused the call to be placed. Further, there is no evidence that any of the individual defendants participated in the call. This isolated phone call is an insufficient basis for personal jurisdiction over the individual defendants.[8] See Fiedler v. First City Nat'l Bank of Houston, 807 F.2d 315, 317-18 (2d Cir.1986) (two telephone calls and one mailing from Texas to New York were insufficient to sustain jurisdiction over non-domiciliary under N.Y.Civ.Prac.L. & R. Sec. 302(a)).
 
 E. Robinson's Other Claims
 
 36
 The district court dismissed Robinson's claims under 18 U.S.C. Secs. 242 and 1385. Both of these are criminal statutes that do not provide private causes of action. See Powers v. Karen, 768 F.Supp. 46, 51 (E.D.N.Y.1991), aff'd 963 F.2d 1522 (2d Cir.1992); Lamont v. Haig, 539 F.Supp. 552, 558-59 (D.S.D.1982). Accordingly, the district court properly dismissed these claims.[9]
 
 III. Conclusion
 
 37
 We affirm the district court's order granting summary judgment for OMSC and dismiss Robinson's claims against AAFES and the individual defendants. Robinson failed to raise a genuine issue of material fact as to whether OMSC's justification for discharging Robinson was pretextual. Robinson's claims against AAFES and the individual federal defendants in their official capacities fail for lack of subject matter jurisdiction. Robinson also failed to make a prima facie showing of personal jurisdiction over the individual federal defendants.
 
 
 38
 Judgment affirmed.
 
 
 
 [1]
 Following these events, Robinson filed a timely claim with the EEOC. He received his right to sue letter on November 10, 1992
 
 
 [2]
 18 U.S.C. Sec. 242 provides for a fine of up to $1,000 and imprisonment for subjecting any inhabitant of the United States to the deprivation of any "rights, privileges, or immunities, secured or protected by the Constitution or laws of the United States." 18 U.S.C. Sec. 1385 provides for a fine of not more than $10,000 and up to two years of imprisonment for using the Army or Air Force as a "posse comitatus" to execute the laws
 
 
 [3]
 If, however, the district court holds an evidentiary hearing, the plaintiff must demonstrate personal jurisdiction by a preponderance of the evidence. CutCo, 806 F.2d at 364; Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp., 751 F.2d 117, 120 (2d Cir.1984)
 
 
 [4]
 Finally, a dismissal for want of subject matter or personal jurisdiction is not a decision on the merits. Consequently, upon such a dismissal the plaintiff is free to institute the suit anew in a jurisdiction or under circumstances supporting jurisdiction. Commonwealth Land Title Ins. Co. v. United States, 759 F.Supp. 87, 90 (D.Conn.1991)
 
 
 [5]
 Because we find that Robinson did not raise a genuine issue of material fact as to OMSC's asserted rationale, we need not decide whether the ADEA applies to foreign corporations headquartered in the United States that employ United States nationals abroad. Accordingly, we need not consider the documents offered by Robinson in his motion to supplement the appendix--documents which purport to show that OMSC is not a foreign corporation. By separate order, we therefore dismiss that motion. We also need not decide whether Robinson was an employee, rather than an independent contractor, under the ADEA
 
 
 [6]
 Robinson offered some evidence in support of this allegation, namely, the affidavit of his former supervisor, Clarence Washington, concerning a conversation between Washington and an OMSC official, Arnold Weber, in which Weber allegedly wanted to replace the older salesmen with "young tigers." The alleged conversation, however, did not refer specifically to Robinson. We therefore consider this statement to be indirect evidence of discrimination. See Grant v. Hazelett Strip-Casting Corp., 880 F.2d 1564, 1568 (2d Cir.1989) (articulating the difference between the McDonnell Douglas burden shifting analysis to be used in cases where no direct evidence of discrimination is available and the analysis to be used where direct evidence is available)
 
 
 [7]
 Similarly, the district court properly dismissed Robinson's claims that Army personnel conducted an illegal search and seizure during an interview of Robinson's son, Kyu Tae Kim
 
 
 [8]
 Because we affirm the district court's grant of summary judgment with respect to the individual federal defendants for want of personal jurisdiction, we need not address the question whether the individual federal defendants were properly served
 
 
 [9]
 Robinson, in his supplemental response to defendants' motions to dismiss and for summary judgment, stated, "plaintiff wants to clarify that no damages are sought under either the Freedom of Information or the Privacy Acts." This statement could reasonably be interpreted as a withdrawal of Robinson's claims under the Freedom of Information Act and the Privacy Act. The district court, therefore, properly dismissed these claims